W. P. RIGGS, Executor, Appellee, v. B. H. GISH, Appellant.

**TRIAL:** Verdict—General and Special—New Trial for Inconsistency.
1 Judgment should not be entered on a special finding, but, on the contrary, a new trial should be granted, when, after the jury is finally discharged, it is clearly made to appear that the jury prop-

erly included interest in a material amount in computing its general verdict, and inadvertently omitted all mention of said interest in its special findings.

**TRIAL: Verdict—Amendment.** Whether the court had power to reassemble on a Monday a jury which had reported and separated on the preceding Saturday, and on the later date permit the jury to disclose and to correct an inadvertent inconsistency between its general verdict and special findings, *quaere.*

*Appeal from Hamilton District. Court.*—H. E. FRY, Judge.

MARCH 17, 1923.

REHEARING DENIED JUNE 22, 1923.

ACTION by executor upon three promissory notes aggregating about $10,000. The defense was a counterclaim in three counts. There was an allowance by the jury upon the counterclaims, and both parties appeal.—*Reversed.*

*D. C. Chase* and *F. J. Lund,* for appellant.

*Martin & Alexander* and *R. G. Remley,* for appellee.

EVANS, J.—I. The plaintiff is executor of the estate of George Herr Reinicker. Reinicker and the defendant were cousins, and during the lifetime of Reinicker engaged in several important business transactions with each other.

1. TRIAL: verdict: general and special: new trial for inconsistency.

Reinicker was a man of capital, and a large landholder in Hamilton County. Gish occupied and farmed a large acreage of Reinicker's land. Gish also owned and occupied land adjoining that of Reinicker. For many years, Reinicker was engaged in improving the drainage of his lands, substantially all of which were low and wet in character. A large part of this work was done by Gish. Count 3 of the counterclaim is predicated upon the performance of a large contract of tile drainage, and the amount claimed therefor is based upon an agreed price per unit and upon a measurement of the work. The amount claimed in this count upon such basis was $6,232.27. Interest was claimed thereon from July, 1913. Issue was made by the plaintiff upon the counterclaims, and trial

was had. In submitting the counterclaims to the jury, the court
instructed the jury to allow interest on such sums as they might
find due the defendant on such counterclaims, or either of them.
Special interrogatories were submitted, requiring the jury to
state the amount of allowance upon each count of the counter-
claims. The jury made an allowance upon each count, and
specified the amount thereof. The amount thus allowed upon
the third count, as indicated by the answer to the fourth inter-
rogatory, was $6,232.27. An allowance of $4,160 was made upon
Count 1, and $1,958 was allowed upon Count 2. The computa-
tion of plaintiff's notes amounted to $18,341.71. A general ver-
dict was rendered for the plaintiff for $3,282.49. As between the
general verdict and the special finding, there was a discrepancy
of $2,708.95. This was the exact amount which would have ac-
crued as interest upon $6,232.27 during the period for which
defendant was entitled to claim interest upon whatever sum was
due him. What was later made to appear was that this was the
amount of interest computed and allowed by the jury upon the
principal sum of $6,232.27, under Count 3. In computing the
amount of the general verdict, this item of $2,708.95 had been
included in the computation. It had not been included as a
part of the answer to Interrogatory 4. This discrepancy ap-
pearing, the defendant sought to have a correction or revising
of the special findings, and that they should be so reformed as
to express the real intent of the jury. The discrepancy was not
discovered until after the separation of the jury. The case was
submitted to the jury at the end of the week. By consent of both
parties, it was provided that, when the jury agreed, it might re-
turn its verdict, and the same might be received by the resident
judge, who was other than the trial judge. It was thus received
in the absence of the trial judge, but without recording or other
formality. On Monday, the jury was reassembled, and was
formally polled, and all members answered affirmatively to the
poll. It does not appear, however, that at this time the dis-
crepancy between the special finding and the general verdict
was brought to the attention of the jury in the polling, or that
there was any attempt by the poll to obtain an explanation there-
of. In response to a motion by the defendant, the court indi-
cated its view at that time as follows:

"Court: I will not send the jury back to their jury room. The interest, under the evidence, would be for the period from 1912 until the present time, which amounts approximately to $2,708.95, being the discrepancy between the special findings and the general verdict, which shows upon its face that an omission has been made erroneously or inadvertently by the jury, the intention of the jury being plainly shown by their general verdict, and by the amount set forth in the answer to the fourth interrogatory."

Later, the court did not see its way clear to adopt the course here suggested. Later, the defendant presented the affidavit of the twelve jurors, which purported to explain the discrepancy and to recite what their finding was. Attached to their affidavit was the sheet upon which their final computation had been made. This included the item of interest, $2,708.95. This had been included in the computation of the general verdict, but had been mistakenly omitted in the answer to the fourth interrogatory. Upon the record presented, there can be no doubt whatever that the special finding to Interrogatory 4 inadvertently failed to express the real finding of the jury. Such being the case, the defendant was entitled to relief in some form. The defendant not only moved for a correction of the special finding, but in the alternative filed a motion for a new trial, upon the same ground and other grounds.

Code Section 3731 provides:

"Sec. 3731. The verdict shall be sufficient in form if it expresses the intention of the jury."

Code Section 3728 provides:

"Sec. 3728. When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly, or set aside the verdict and findings, as justice may require."

The final conclusion of the trial judge was that he had no power to interfere with the form of the verdict as rendered, and he entered judgment for the plaintiff upon the special find-2. TRIAL: verdict: ings. The judgment thus entered was, there-amendment. fore, $2,708.95 in excess of the general verdict. This, of course, was a proper entry if the court was powerless to grant the defendant any relief. The power of the court to re-

assemble a jury that has once separated and to send it back into the jury room is, of course, limited by the statutory power of the jury itself under such circumstances. It is well settled that there is, at such a stage, no power of deliberation left in the jury. Under the proper supervision of the court, however, it does have power to act ministerially, and to make such clerical corrections as shall properly express the result of its actual previous deliberations. It would, perhaps, be more accurate to say that *the court* has power by this method to correct a mistake, where it clearly and indisputably appears that a mistake has been made, and especially where the fact of mistake appears in a clear discrepancy between special finding and general verdict. *Matthys v. Donelson*, 179 Iowa 1111, 1120. Upon the record before us, we are not prepared to say that the court lacked power, at the time of the polling of the jury, to permit the jury to disclose and to correct the inadvertence. Be that as it may, it is too late to make such a correction now. There could be no doubt of the power of the trial court at such a time to have set aside the verdict and granted a new trial. This is the clear provision of Section 3728. We discover no reason in the record why that should not have been done.

II. For the reasons indicated in the foregoing division, it is manifest that a reversal of the judgment below and the granting of a new trial is unavoidable. The appellant has assigned a large number of errors in the rulings of the court in the course of the trial. We take it that these are presented as an alternative, with a view of obtaining a new trial even though our holdings should be adverse to him on the points considered in the preceding division. In view of our conclusion that the defendant is entitled to a new trial upon the ground first stated, we see little occasion for the consideration of the other two score errors assigned.

The appellee also has appealed, and has assigned error also upon the rulings of the court in the course of the trial. This is a law action. Unless we can say, upon the record, that one party or the other was entitled to a directed verdict upon some branch of the case, we see little occasion for consideration of the specific errors complained of by the appellee. We do not find that either party was entitled to a directed verdict upon the counterclaim

submitted by the court.  The most we could do, therefore, in any event, in the further consideration of errors, whether assigned by appellant or appellee, would be to order a new trial. Such an order is inevitable, upon the grounds indicated in Division I hereof.  Its effect will be to set aside the judgment, and to leave the parties in the position which each occupied in advance of the trial.  It is, therefore, ordered that the judgment below be reversed and set aside, and a new trial ordered, all without prejudice to either litigant, so far as previous adjudication is concerned.  The costs of this court will be apportioned, one half to each party.—*Reversed and remanded.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.